**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Parzenn Partners, LLC<br><br>            Plaintiff,<br><br>   v.<br><br>Kathy A. Baran, in her Official Capacity, Director of the California Service Center, U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security;<br><br>Kenneth Cuccinelli, in his Official Capacity, Acting Director, U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security;<br><br>Kevin McAleenan, in his Official Capacity, Acting Secretary, U.S. Department of Homeland Security;<br><br>U.S. Citizenship and Immigration Services;<br><br>U.S. Department of Homeland Security,<br><br>            Defendants. | **CIVIL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT**<br><br>Case No. 19-11515<br>No request for Jury Trial |

## INTRODUCTION

1.      This civil action seeks declaratory and injunctive relief against Kathy A.

Baran, Director of the California Service Center, U.S. Citizenship and Immigration

Services ("USCIS"), U.S. Department of Homeland Security ("DHS"); Kenneth

Cuccinelli, Acting Director, USCIS; Kevin McAleenan, Acting Secretary, DHS;

USCIS; and DHS (collectively "the Government") under the Administrative and

Procedure Act ("APA"), 5 U.S.C. § 701, *et. seq.*

1

2.      On June 27, 2019, the Government unlawfully denied a Form I-129, Petition for Nonimmigrant Worker, otherwise known as an H-1B visa petition, filed by PARZENN PARTNERS, LLC ("Parzenn"), on behalf of employee, Mr. Dhvanish Shah ("Mr. Shah").

3.      Parzenn sought to lawfully and gainfully employ Mr. Shah for a three-year period in H1-B status as an Operations Research Analyst/Consultant.

4.      USCIS arbitrarily and capriciously concluded that the position of Operations Research Analyst/Consultant did not constitute a specialty occupation and denied the H-1B petition.

5.      The Government's unlawful, arbitrary, and capricious action affects the immigration status of Mr. Shah, subjecting him to possible removal from the United States and a bar to his re-entry for a period of 3 or 10 years.  *See* Section 212(a)(9)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1189(a)(9)(B).

6.      This Court should hold unlawful and set aside the decision of USCIS and declare that Mr. Shah meets the qualifications for an H-1B visa.  *See* 5 U.S.C. § 706(2).

**JURISDICTION**

7.      This case arises under INA § 101, 8 U.S.C. § 1101, *et. seq.*, and the APA, 5 U.S.C. § 701, *et. seq.*  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as a

civil action arising under the laws of the United States.  *See generally Tapis Int'l v. INS*, 94 Supp. 2d. 172, 173 (D. Mass. 2000); *see also Ore v. Clinton*, 675 F. Supp. 2d. 217, 222 (D. Mass. 2009).  This Court also has the authority to grant declaratory relief under 28 U.S.C. §§ 2201-02, and injunctive relief under 5 U.S.C. § 702 and 28 U.S.C. §§ 1361-62.  Alternatively, the Court has jurisdiction under 8 U.S.C. § 1252.  The United States has waived sovereign immunity under 5 U.S.C. § 702.

8.      USCIS's decision to deny Parzenn's visa petition is a final agency decision ripe for judicial review and Parzenn need not have sought an appeal before USCIS's Administrative Appeals Office ("AAO") before invoking the jurisdiction of this Court.  *See Ore*, 675 F. Supp 2d at 223, *citing Darby v. Cisneros*, 509 U.S. 137, 153-54, 113 S. Ct. 2539 (1993); *accord EG Enterprises, Inc. v. DHS*, 467 F. Supp. 2d 728, 733 (E.D. Mich. 2006) (government concurs that plaintiff need not seek appeal before the AAO before filing action under the APA).

## **VENUE**

9.      Venue is proper before this Court pursuant to 28 U.S.C. § 1391(e) because (1) this is a civil action in which Defendants are either employees or officers of the United States, acting in their official capacity, or an agency of the United States; (2) a substantial part of the events or omissions giving rise to the claim occurred in

the District of Massachusetts, as Parzenn is a Massachusetts-based company; and

(3) there is no real property involved in this action.

## PARTIES

**Plaintiff:**

10.     Parzenn is a business advisory services firm that caters to small- and mid-

market business owners, providing them tools to generate new revenues and reduce

costs.  Parzenn's services include operations management, marketing analytics,

process audit and transformation, and due diligence.  Parzenn is based in

Wellesley, Massachusetts, where it has two full-time domestic employees.  It

employs two managers inside the United States and one manager who works

outside the United States.

11.     Parzenn filed two separate H-1B visa petitions on behalf of Mr. Shah, who is

a citizen and national of India lawfully present in the United States on a student

"F1 OPT" visa.  From 1995 until 2010, Mr. Shah was a lawful permanent resident

of the United States.  Mr. Shah relinquished his "green card" after spending

significant time overseas and acting in line with his intent to permanently reside

abroad.

**Defendants:**

12.     Defendant Kathy A. Baran is the Director of the California Service Center

("CSC").  Among other responsibilities, the CSC adjudicates visa petitions on

4

behalf of employers, such as the H-1B visa petition Parzenn filed.  Defendant Ms. Baran is sued in her official capacity.

13.     Defendant Kenneth Cuccinelli is the Acting Director of USCIS.  As Acting Director, Defendant Cuccinelli directs the administration of USCIS, which oversees the issuance of visas along with its responsibility to implement the INA and other immigration-related laws.  Defendant Cuccinelli is responsible for USCIS's policies, practices and procedures, which include the delegated personnel who adjudicated Parzenn's H-1B visa petition.  Defendant Cuccinelli is sued in his official capacity.

14.     Defendant Kevin McAleenan is the Acting Secretary of DHS, the federal agency overseeing many component agencies, including USCIS.  In his official capacity, Defendant McAleenan is responsible for the administration and enforcement of the INA and immigration-related laws.  Defendant McAleenan is sued in his official capacity.

15.     Defendant USCIS is a component agency of DHS and shares responsibility for the implementation of the INA and immigration-related laws of the United States.  USCIS is specifically tasked with the adjudication of immigration benefits, which includes the adjudication of H-1B visa petitions.

16.     Defendant DHS is a cabinet department of the United States federal government overseeing many immigration-based component parts, such as USCIS, Immigration and Customs Enforcement, and Customs and Border Protection.

## LEGAL BACKGROUND

### A. The H-1B Visa

17.     An H-1B visa allows an alien to obtain temporary admission to the United States to "perform services . . . in a specialty occupation."  INA § 101(a)(15)(H)(i)(b), 8 U.S.C. § 1101(a)(15)(H)(i)(b).

18.     To apply for the H1-B visa program, an employer must file a Labor Condition Application ("LCA") with the Department of Labor ("DOL").  The DOL will qualify the offered position at one of four wage levels that may meet the threshold for an H-1B qualifying position.  *See* 8 U.S.C. § 1182(n).

19.     Once the DOL issues an LCA, a sponsoring employer must file a petition that demonstrates, by a preponderance of the evidence, that: (1) the position offered to the non-citizen qualifies as a "specialty occupation"; and (2) the non-citizen is qualified to perform services in that occupation.  8 U.S.C. § 1184(c); 8 C.F.R. § 214.2(h)(4)(i)(B)(2)

20.     Pursuant to the INA definition, a "specialty occupation" means an occupation that requires –

> (A)  theoretical and practical application of a body of specialized knowledge; and

> (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States.

8 U.S.C. § 1184(i)(1).

21.    Administrative regulations repeat the statutory definition of a "specialty occupation" and provide a non-exhaustive list of fields as examples of specialty occupations:

> Specialty occupation means an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts, and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States.

8 C.F.R. § 214.2(h)(4)(ii).

22.    The regulations further provide that an occupation qualifies as a specialty occupation if any one of four criteria is satisfied:

> (1)    A baccalaureate or higher degree **or its equivalent is normally** the minimum requirement for entry into a particular position;

> (2)    The degree requirement is common to the industry in parallel positions among similar organization or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;

7

(3)    The employer normally requires a degree or its equivalent for the position; or

(4)    The nature of the specific duties are so specialized and complex that knowledge required to perform the duties **is usually associated with the attainment of a baccalaureate or higher degree**.

8 C.F.R. § 214.2(h)(4)(iii)(A) (emphasis added).

### B. "Cap-Exempt" H-1B Visa

23.    Congress has "capped" the total number of aliens who may be issued H-1B visas at 85,000 per fiscal year.  *See* 8 U.S.C. § 1184(g).

24.    The statutory cap contains limited exemptions.  *See* 8 U.S.C. §§ 1184(g)(5), (g)(7).  Pursuant to 8 U.S.C. § 1184(g)(5)(A)-(B), the numerical limitation or cap does not apply to a beneficiary who "is employed (or has received an offer of employment) at an institution of higher education (as defined in section 101(a) of the Higher Education Act of 1965 (20 U.S.C. 1001(a))), or a related or affiliated nonprofit entity or  is employed (or has received an offer of employment) at a nonprofit research organization or a governmental research organization."

25.    Beneficiaries of approved H-1B visas may be admitted temporarily to the United States for up to a three-year term.  INA §§ 1101(a)(15)(H)(i)(b), 214(c); 8 U.S.C. §§ 1101(a)(15)(H)(i)(b), 1184(c).

## FACTUAL BACKGROUND

26.     On or about January 18, 2019, Parzenn filed a Cap-Exempt H-1B petition on behalf of Mr. Shah, seeking to employ him in a specialty occupation as an Operations Research Analyst/Consultant.  **Exhibit A.**

27.     On February 1, 2019, USCIS issued a Request for Evidence ("RFE") finding that, as a 50 percent equity holder in the company, Parzenn had not "sufficiently established" Mr. Shah was an employee who could qualify as an H1-B beneficiary. **USCIS did not dispute that the intended position of Operations Research Analyst/Consultant qualified as a specialty occupation**.  **Exhibit A.**

28.     On March 11, 2019, USCIS remained unpersuaded by the additional, detailed evidence Parzenn submitted and denied the petition **solely on the basis of that Parzenn had failed to demonstrate a valid employer-employee relationship**.  **Exhibit A**.

29.     On April 11, 2019, Parzenn filed a second Cap-Exempt H1-B petition that included further evidence that it employed Mr. Shah.  **Exhibit B**.

30.     In support of its petition, Parzenn presented: a company support letter detailing the job duties, requirements, terms of employment, and Mr. Shah's qualifications; descriptive information about the company and its services; evidence concerning the relationship between Parzenn and Babson College, and Mr. Shah's on site mentorship duties in furtherance of the mission of Babson

College; and copies of Mr. Shah's diplomas and official transcripts, demonstrating

he has earned a Master of Business Administration from Babson College and a

Bachelor of Commerce from NMIMS University in India.  **Exhibit B**.

31.     On April 26, 2019, USCIS issued an RFE finding the evidence submitted

"insufficient to establish" (1) that Mr. Shah's duties "directly and predominantly"

further the mission or purpose of Babson College; (2) a valid employer-employee

relationship; and (3) Mr. Shah's position as an Operations Research

Analyst/Consultant qualified as a specialty occupation.  **Exhibit C**.

32.     USCIS found "no apparent standard for how one prepares for a career" in

the position of Operations Research Analyst/Consultant and "no requirement for a

degree in a specific specialty."  **Exhibit C**.

33.     On June 13, 2019, Parzenn timely responded to the RFE with detailed

evidence that included:

> **a.** a detailed chart – spanning several pages – thoroughly breaking down each duty, the percentage of time spent on each duty, the education, experience, training, and special skills required to perform each duty, and how the educational requirements relate to the position.
>
> **b.** documentary examples of the typical specialized and complex knowledge required to complete the necessary duties;
>
> **c.** a legal memorandum explaining why the first criterion for an H-1B petition under 8 C.F.R. § 214.2(h)(iii)(A)(1) may be satisfied with evidence that a degree is normally required, but not always necessary;

**d.** job postings for Operations Research Analysts from the Department of Labor's CareerOneStop, which demonstrated that Operations Research Analyst positions normally require a bachelor's degree or higher;

**e.** a seven-page page expert opinion from Professor Alan B. Eisner, Ph.D., Interim Dean for Graduate Programs in Management and Management Science at the Lubin School of Business at Pace University.  After speaking with Parzenn management about Mr. Shah's position, Professor Eisner concluded that Operations Research Analysis and Management "in and of themselves comprise highly specialized bodies of knowledge, admitting theoretical and practical application in specialized, unique, and complex positions … It is my opinion that the position requires at least a US Bachelor's degree in Operations Research, Management, **or related**, or its equivalent" (emphasis added). Professor Eisner's expert letter was accompanied by a letter of reference from John Byrne, Ph.D., Associate Dean of the Lubin School of Business, who confirmed that Professor Eisner is a highly qualified professor, authorized by Pace University to award credit for work experience.

**f.** A legal memorandum showing that Dean Eisner's expert opinion demonstrated that the offered opinion satisfied the (fourth) "specialized and complex" criterion for a specialty occupation at 8 C.F.R. § 214.2(h)(iii)(A). **Exhibit D**.

34.     On June 27, 2019, USCIS issued a decision denying Parzenn's petition on the sole basis that Parzenn did not demonstrate that the position of Operations Research Analyst/Consultant constituted a specialty occupation.  **Exhibit E**.

35.    USCIS found that Mr. Shah's position failed to meet the first criterion at 8

C.F.R. § 214.2(h)(iii)(A)(1) for a specialty occupation. It referenced the DOL's

Occupational Outlook Handbook ("OOH"), stating:

> … although the OOH indicates that a bachelor's degree
> is typically required for operations research analyst
> positions, the position is an occupation that does not
> normally require at least a baccalaureate level of
> education in a specific field … A wide range of
> educational backgrounds is suitable for the occupation.
> There is no apparent standard for how one prepares
> for a career as an operations research analyst … The
> requirements appear to vary by employer as to what
> course of study might be appropriate … **Exhibit E**.

36.    USCIS similarly concluded that Mr. Shah's position failed to meet the fourth

"specialized and complex" criterion at 8 C.F.R. § 214.2(h)(iii)(A)(4).  **Exhibit E**.

37.    USCIS found Professor Eisner's expert opinion "not probative" because:

> the professor reached [his] conclusion by relying on
> [Parzenn's] description of the position rather than any specific
> study of the position at [its] organization … there is no
> indication that the professor visited [Parzenn's] business,
> observed [their] employees, interviewed them about the
> nature of their work, or documented the knowledge that
> they apply on the job … **Exhibit E**.

38.    USCIS also concluded that the "Level I" wage certified by the DOL

undercut Parzenn's argument that an Operations Research Analyst/Consultant

position "is so specialized and complex that knowledge required to perform the

duties is usually associated with the attainment of a bachelor's or higher degree."

**Exhibit E**.

## STATEMENT OF CLAIMS

**Count One:**
**Violation of the Administrative Procedure Act, 5 U.S.C. § 701, et. seq.**
**USCIS's Prior Acceptance that Parzenn's Offered Position Qualified as a**
**Specialty Occupation Demonstrates the Agency's Implausible, Arbitrary and**
**Capricious Action**

39.     Parzenn re-alleges and incorporates by reference herein all of the

allegations set forth above.

40.     The APA empowers this Court to set aside a final agency action where, as

here, the agency action is "arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

41.      An arbitrary and capricious determination results where "the agency has

relied on factors which Congress has not intended it to consider, entirely failed to

consider an important aspect of the problem, offered an explanation for its decision

that runs counter to the evidence before the agency, or is so implausible that it

could not be ascribed to a difference in view or the product of agency expertise."

*Ore*, 675 F. Supp. 2d at 224, *quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut.*

*Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856 (1983).

42.     In its June 27, 2019 decision, USCIS (1) arbitrarily disregarded and

misapprehended Parzenn's evidence; (2) reached a decision that inexplicably

departed from its previous view of the materially indistinguishable evidence

relating to whether the position qualified as a specialty occupation; (3) entirely

failed to discuss or otherwise demonstrate that it considered the material evidence; and (4) offered implausible, cursory explanations in an attempt to justify its preordained, unlawful action.  **Exhibit E**.

43.     When Parzenn filed its first H-1B petition, USCIS accepted that Mr. Shah's position qualified as a specialty occupation; USCIS's only objection related to whether Parzenn and Mr. Shah had a *bona fide* employer-employee relationship. **Exhibit A**.

44.     Only once Parzenn's evidence overwhelmingly persuaded USCIS to find a valid employment relationship – at great effort and considerable cost due to the filing of a second H-1B petition – did the agency implausibly and irrationally attempt to search for a new way to deny the second H-1B petition.  **Exhibits A, E.**

45.     Despite raising no issue beforehand, USCIS concluded in its second decision that the evidence presented **no longer sufficed to show that the Operations Research Analyst/Consultant position qualified as a specialty occupation**. **Exhibit E**.

46.     The Court should set aside this abject abuse of agency discretion.

**Count Two:**
**Violation of the Administrative Procedure Act, 5 U.S.C. § 701, et. seq.**
**USCIS Arbitrarily and Capriciously Found a Degree or its Equivalent is not**
***Normally* Required for Mr. Shah's Position as an Operations Research**
**Analyst**

47.     Parzenn re-alleges and incorporates by reference herein all of the

allegations set forth above.

48.     USCIS arbitrarily and capriciously found that the current position offered to

Mr. Shah did not meet the first of four criteria for specialty occupation, namely

that "a baccalaureate or higher degree **or its equivalent is normally** the minimum

requirement for entry into the particular position."  8 C.F.R. §

214.2(h)(4)(iii)(A)(1) (emphasis added).  **Exhibit E**.

49.     First, USCIS misapprehended the OOH.  USCIS only relied on the

following snippet of the OOH, relating to Operations Research Analysts:

> Although the typical educational requirement for entry-
> level positions is a bachelor's degree, some employers
> may prefer to hire applicants with a master's degree.
> Because few schools offer bachelor's and advanced
> degree programs in operations research, analysts
> typically have degrees in other related fields.  **Exhibit E**.

50.     Having failed to consider the complete language, USCIS arbitrarily

concluded that operations research "is an occupation that does not **normally**

require at least a baccalaureate level of education in a specific field …" (emphasis

added).  **Exhibit E**.

51.    A fair, complete and plain reading of the language refers to the specific specialty degree required **and equivalent degrees required** for Operations Research Analyst positions; the OOH specifically states, "[b]ecause few schools offer bachelor's and advanced degree programs in operations research, analysts typically have degrees **in other related fields**" (emphasis added).  **Exhibits D, E**.

52.    The complete language of the OOH provides:

> HOW TO BECOME AN OPERATIONS RESEARCH ANALYST
>
> **Education**
>
> Many entry-level positions are available for those with a bachelor's degree.  However, some employers may prefer to hire applicants with a master's degree.
>
> Although some schools offer bachelor's and advanced degree programs in operations research, **some analysts have degrees in other technical or quantitative fields**, such as engineering, computer science, analytics, or mathematics.
>
> Because operations research is based on quantitative analysis**, students need extensive coursework in mathematics**.  Courses include statistics, calculus, and linear algebra.  Coursework in computer science is important because analysts rely on advanced statistical and database software to analyze and model data.  **Courses in other areas**, such as engineering, economics, and political science, **are useful** because **operations research is a multidisciplinary field with a wide variety of applications** (emphasis added).  **Exhibits D, E**.

53.     Since "[m]any entry-level positions are available for those with a bachelor's degree" and other employers prefer "applicants with a master's degree," it rationally follows that such a degree is "normally" required for the position, thus meeting the first criterion for an H-1B specialty occupation.  *See Next Generation Tech, Inc. v. Johnson*, 328 F. Supp. 3d 252, 267 (S.D.N.Y. 2017). ("this Court is at a loss to see a 'rational connection' between the evidence indicating that '*most* computer programmers have a bachelor's degree' and USCIS's determination that 'computer programmers *are not normally required to have* a bachelor's degree.'), *quoting Berrios v. Holder*, 502 Fed. Appx. 100, 101 (2d Cir. 2012)) (emphasis in original).

54.     USCIS abused its discretion in irrationally finding otherwise.

55.     Second, even if it had considered the complete language of the OOH, USCIS erroneously viewed the OOH as an exclusive, mandatory source of knowledge as to what constitutes a specialty occupation for purposes of the INA.  **Exhibits D, E**.

56.     The DOL's own Bureau of Labor Statistics ("BLS"), tasked with publishing and updating the OOH, has put forth its own disclaimer plainly stating the OOH should not be interpreted as an absolute authority or be used for any legal purpose:

> Although these references were carefully compiled, the Bureau of Labor Statistics (BLS) has neither the authority nor the facilities to investigate the organizations or the information or publications made available to BLS**.** **As a result, BLS cannot guarantee the accuracy of such information and the listing of an organization**

**does not constitute in any way an endorsement or recommendation by BLS, either of the organization and its activities or of the information the organization may supply**… [The] OOH provides a **general, composite description of jobs and cannot be expected to reflect work situations in specific establishments or localities. The OOH, therefore, is not intended to, and should never, be used for any legal purpose**… **BLS has no role in establishing educational, licensing, or practicing standards for any occupation**… **The education information in the OOH presents the typical requirements for entry into the given occupation and does not describe the education and training of those individuals already employed in the occupation. In addition, education requirements for occupations may change over time and often vary by employer or state.  Therefore, the information in the OOH should not be used to determine if an applicant is qualified to enter a specific job in an occupation**"[1] (emphasis added).

57.     Despite this clear disclaimer, and clear acknowledgement by BLS that the information contained in the OOH may be outdated or inaccurate, USCIS invoked the OOH as an authoritative source that dictated the present outcome.  **Exhibits D, E**.

58.     The plain language of the OOH is revised every two years; real-time updates are not provided.  There is no rational reason for USCIS to solely rely upon the stale recitation of required levels or types of education for a given field –

---

[1]  This language is located at www.bls.gov/ooh/about/disclaimer.htm?view_full

particularly those which involve technology that evolves quickly – especially

where, as here, more updated, material evidence is proffered.  **Exhibits D, E**.

**Count Three:**
**Violation of the Administrative Procedure Act, 5 U.S.C. § 701, et. seq.**
**USCIS Arbitrarily and Capriciously Disregarded Parzenn's Probative**
**Evidence that the Offered Position Constituted a Specialty Occupation**

59.     Parzenn re-alleges and incorporates by reference herein all of the

allegations set forth above.

60.     USCIS arbitrarily rejected and misapprehended the complete record

evidence that, if considered in the aggregate, demonstrated well beyond a

preponderance of the evidence that the nature of the duties for an Operations

Research Analyst/Consultant required specialized and complex knowledge, and

thus satisfied the fourth criterion for an H-1B visa.  *See* 8 C.F.R. §

214.2(h)(4)(iii)(A)(4).  **Exhibit E**.

61.     In particular, USCIS irrationally disregarded the expert opinion of Professor

Eisner who assessed the Operations Research Analyst/Consultant position through

a comprehensive review and personal interview with Parzenn management.

**Exhibit E**.

62.     USCIS implausibly found that "[t]he professor reached [his] conclusion by

relying on [Parzenn's] description of the position rather than any specific study of

the position at [its] organization … The professor does not demonstrate or assert

in-depth knowledge of [Parzenn's] business operations or how the duties of the

position would actually be performed … there is no indication that the professor visited your business …" **Exhibit E**.

63.     Without citing any authority or record evidence to doubt the credibility of Professor Eisner or justify its apparent view that a *bona fide* expert must conduct a site visit in order for USCIS to credit that expert's opinion, USCIS irrationally and inexplicably disregarded Professor Eisner's opinion as "not probative." **Exhibit E**.

64.      Under the Federal Rules of Evidence (the stringencies of which do not apply in immigration proceedings), "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of **or** personally observed." Fed. R. Evid. 703 (emphasis added).  In finding Professor Eisner's expert opinion "not probative," USCIS erred, as it disregarded that Professor Eisner spoke with Parzenn on the phone to research the position offered to Mr. Shah, to support his opinion.  **Exhibits D, E**.

65.     USCIS's disregard of Professor Eisner's expert opinion as "not probative" constituted an abuse of discretion.

## Count Four:
## Violation of the Administrative Procedure Act, 5 U.S.C. § 701, et. seq. USCIS Unlawfully Relied on DOL's Proffered Wage Level to Deny Parzenn's H-1B Petition

66.     Parzenn re-alleges and incorporates by reference herein all of the allegations set forth above.

67.     USCIS abused its discretion in making the assertion that DOL's "Level I" wage for the offered position undercut Parzenn's argument that an Operations Research Analyst/Consultant position "is so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a bachelor's or higher degree." **Exhibits D, E**.

68.     USCIS's reliance on the wage level constituted an arbitrary departure from its own policy.  The AAO has concluded:

> A position's wage level designation certainly is relevant, but is not a substitute for determination that a proffered position meets the requirements of section 214(i)(1) of the Act.  We assess each case on its merits.  There is no inherent inconsistency between an entry-level position and a specialty occupation.  For some occupations, the 'basic understanding' that warrants a Level I wage may require years of study, duly recognized upon the attainment of a bachelor's degree in a specific specialty.  Most professionals start their careers in what are deemed entry-level positions. That doesn't preclude us from identifying a specialty occupation.

*Matter of B-C, Inc.*, ID #1139516 (AAO Jan. 25, 2018).

69.     It is well established that an "unexplained inconsistency in agency policy is a reason for holding an interpretation to be an arbitrary and capricious change from agency practice."  *Encino Motorcars, LLC v. Navarro*, ---- U.S. --, 136 S. Ct. 2117, 2126, 195 L. Ed. 2d 382 (2016) (internal citation omitted).  USCIS's decision reflects an arbitrary and unexplained departure from the position of the AAO, and thus should be set aside.   *Id.*

70.     Additionally, reliance on the DOL's wage level constituted an *ultra vires* action because it usurped the statutory and regulatory authority provided to DOL to exclusively determine appropriate wage levels.  20 C.F.R. § 655.731(a)(2)(A).[2]

**Count Five:**
**Violation of the Administrative Procedure Act, 5 U.S.C. § 701, et. seq.**
**USCIS Unlawfully Used Boilerplate Language as a Substitute for**
**Meaningful, Rational Review**

71.     Parzenn re-alleges and incorporates by reference herein all of the allegations set forth above.

72.     USCIS's use of boilerplate and conclusory statements reflects a failure of the agency to conduct the requisite meaningful review and exercise proper discretion. **Exhibit E**.

73.     In addressing Mr. Shah's job duties and invoking the OOH, USCIS simply listed the 11 duties; supplied no analysis of the complex tasks or knowledge required to carry out each duty; immediately turned to the OOH; quoted from the OOH; misinterpreted the OOH; and offered this conclusory sentence: "As a result, the proffered position cannot be considered to have met this criterion."  **Exhibit E**.

---

[2] DOL defines Level 1 as follows:

> Level 1 (entry) wage rates are assigned to job offers for beginning level employees who have only basic understanding of the occupation. These employees perform routine tasks that require limited, if any, exercise of judgement. **The tasks provide experience and familiarization with the employer's methods, practices, and programs**. The employees may perform higher level work for training and developmental purposes. **These employees work under close supervision and receive specific instructions on required tasks and results expected. Their work is closely monitored and reviewed for accuracy**. Statements that the job offer is for a research fellow, a worker in training, or an internship are indicators that a Level 1 wage should be considered. (http://www.flcdatacenter.com/download/NPWHC_Guidane_Revised_11_2009.pdf) (emphasis added).

74.     Furthermore, USCIS seized on Mr. Shah's DOL "Level I" wage; summarily stated the wage fails to support an argument that a position is complex; selected a description of a "Level I" wage from a 10-year-old DOL publication; used an entry level role as faulty evidence that the position is not a specialty occupation; and offered this conclusory sentence: "As such, you have not shown that this position involves duties seen as either unique or complex so that only an individual with a bachelor's degree or higher in a specific specialty could perform them." **Exhibit E**.

75.     Finally, USCIS failed to provide *any* assessment of Professor Eisner's substantive conclusions; mentioned not a single sentence of Professor Eisner's expert opinion; put forth an arbitrary and illogical stance that an expert's testimony cannot be credited unless the expert conducts a site visit; and offered this conclusory sentence: "Thus, USCIS discounts the advisory opinion as not probative …" **Exhibit E**.

76.     By substituting boilerplate and conclusory statements for actual meaningful review of a comprehensive petition, USCIS abused its discretion.

**Count Six:**
**Violation of the Administrative Procedure Act, 5 U.S.C. § 705**
**The Status and Rights of all Affected Parties should be Preserved Pending**
**Conclusion of Proper Agency Review**

77.     Parzenn re-alleges and incorporates by reference herein all of the allegations set forth above.

23

78.    Pursuant to 5 U.S.C. § 705, this Court may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve the status or rights pending conclusion of the review proceedings.

79.    The denial of Parzenn's H-1B petition will prevent the company from employing Mr. Shah in the United States on critical ongoing projects.

80.    Postponing the effectiveness of the denial will not cause any harm whatsoever to Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Parzenn Partners, LLC respectfully requests that this Court grant the following relief:

A.    Assume jurisdiction over this matter;

B.    Hold unlawful and set aside USCIS's decision denying the H-1B petition on behalf of Plaintiff on the grounds that the decision was arbitrary and capricious;

C.    Enter an order requiring USCIS to approve the H-1B petition and application for a change of status in favor of Plaintiff;

D.    Award to Plaintiff attorneys' fees, costs, and interest as permitted by law; and

E.      Grant such further and other relief as may be just and proper.

Respectfully submitted,

Parzenn Partners, LLC, by their attorney,

/s/Jesse M. Bless

Jesse M. Bless (MA BBO # 660713)
JEFF GOLDMAN IMMIGRATION LLP
125 Washington Street, Ste. 204
Salem, MA 01970
(781) 704-3897
Jesse@jeffgoldmanimmigration.com


Dated:       July 11, 2019

## <u>CERTIFICATE OF COMPLIANCE</u>

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Parzenn Partners, LLC, by their attorney,

/s/Jesse M. Bless
Jesse M. Bless (MA BBO # 660713)
JEFF GOLDMAN IMMIGRATION LLP
125 Washington Street, Ste. 204
Salem, MA 01970
(781) 704-3897
Jesse@jeffgoldmanimmigration.com

Dated:      July 11, 2019

26

## <u>LIST OF EXHIBITS</u>

Exhibit A:   Copy of Final H-1B Decision I

Exhibit B:   Selected Portions of H-1B Petition II

Exhibit C:   Copy of RFE II

Exhibit D:   Copy of RFE Response II

Exhibit E:   Copy of Final Decision II