UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PARZENN PARTNERS, LLC, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| KATHY A. BARAN, in her Official Capacity, Director of the California Service Center, U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security; KENNETH CUCCINELLI, in his Official Capacity, Acting Director, U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security; KEVIN MCALEENAN, in his Official Capacity, Acting Secretary, U.S. Department of Homeland Security; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; and U.S. DEPARTMENT OF HOMELAND SECURITY, | * * * * * * * * * * * * Civil Action No. 19-cv-11515-ADB |
| Defendants. | * * |

## MEMORANDUM AND ORDER ON PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

BURROUGHS, D.J.

Plaintiff Parzenn Partners, LLC ("Parzenn") challenges the denial of an H-1B nonimmigrant specialty worker visa ("H-1B visa") application submitted on behalf of one of its employees, Dhvanish Shah. Currently pending before the Court is Parzenn's Emergency Motion for Temporary Restraining Order and Preliminary Injunction through which Parzenn seeks a stay of the U.S. Citizenship and Immigration Services ("USCIS")[1] decision denying Parzenn's

---

[1] For ease, the Court refers to Defendant U.S. Citizenship and Immigration Services throughout this memorandum and order when referring to the entity that denied Parzenn's visa application. Otherwise, the Court references "Defendants" collectively, which refers to Kathy A. Baran, Director of the California Service Center; Kenneth Cuccinelli, Acting Director of U.S.

application for an H-1B visa, enjoining USCIS from taking any adverse action against Parzenn or Mr. Shah, and ordering USCIS to maintain the state of affairs as it existed on September 10, 2019, for the duration of this proceeding. [ECF Nos. 17, 17-1]. For the following reasons, Parzenn's motion for a preliminary injunction [ECF No. 17] is DENIED.

## I. BACKGROUND

Parzenn is a startup business advisory services firm that works with clients from various industries. [ECF No. 17-2 ¶¶ 2–3]. Mr. Shah, a native and citizen of India, is one of Parzenn's co-founders and one of its few employees. [ECF No. 1-5 at 93 (organizational chart); ECF No. 17-3 ¶ 1]. He received a Masters in Business Administration from Babson College in May 2018. [ECF No. 17-3 ¶ 3]. Mr. Shah also holds a Bachelor of Commerce degree from Narsee Monjee Institute of Management Studies. [ECF No. 1-5 at 102]. After receiving his MBA, Mr. Shah began work at Parzenn once he was granted valid F-1 OPT employment authorization. [ECF No. 1-5 at 48; ECF No. 17-3 ¶¶ 4–5].

On January 18, 2019, Parzenn filed a petition with USCIS to obtain an H-1B visa for Mr. Shah so that he could work as an entry-level Operations Research Analyst/Consultant for a term of three years. [ECF No. 1-4 at 2]. On February 1, 2019, USCIS issued a Request for Evidence ("RFE") concerning Mr. Shah's eligibility for an H-1B visa after determining that he owned a 50% equity stake in the company. [Id. at 2-3]. Parzenn timely complied with the RFE. [Id. at 2]. On March 11, 2019, USCIS denied Parzenn's petition because it found that Mr. Shah owned or controlled the petitioning company. [Id. at 2–5].

---

Citizenship and Immigration Services; Kevin McAleenan, Acting Secretary, U.S. Department of Homeland Security; U.S. Citizenship and Immigration Services; and U.S. Department of Homeland Security.

On April 11, 2019, Parzenn filed a second petition for an H-1B visa for Mr. Shah. [ECF No. 1-5]. On April 26, 2019, USCIS issued an RFE for information regarding *inter alia* whether Mr. Shah's position as an Operations Research Analyst/Consultant qualified as a "specialty occupation" within the meaning of the Immigration and Nationality Act ("INA"). [ECF No. 1-6 at 1, 7–13]. On June 13, 2019, Parzenn timely complied with the RFE. [ECF No. 1-7]. On June 27, 2019, USCIS denied Parzenn's petition on the ground that Parzenn had failed to demonstrate that the Operations Research Analyst/Consultant position was a "specialty occupation." [ECF No. 1-8].[2]

On July 11, 2019, Parzenn initiated this action. [ECF No. 1]. Defendants answered the complaint on September 13, 2019. [ECF No. 14]. On October 16, 2019, Parzenn filed the instant motion for a preliminary injunction. [ECF No. 17]. On October 21, 2019, the Court held a status conference and set a briefing schedule for the pending motion. [ECF No. 19]. On November 4, 2019, Defendants opposed the motion for a preliminary injunction. [ECF No. 20]. On November 7, 2019, Parzenn filed a reply brief. [ECF No. 22]. Also on November 7, 2019, the Court heard argument on the motion. [ECF No. 23].

## II.     DISCUSSION

### A.     Legal Standard

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Parzenn, as the moving party, bears the

---

[2] A third petition for an H-1B visa was denied on September 11, 2019, but is not the subject of this litigation. See [ECF No. 20-1 at 2, 7–15 (April 1, 2019 application through Vermont Service Center)]; see also [ECF No. 17-1 at 1].

3

burden of satisfying each of these elements. See Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003).

Courts do not afford equal weight to the four factors. Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013). Rather, the movant's likelihood of success on the merits "is the main bearing wall of the four-factor framework." Id. at 10 (quotation marks and citation omitted). In the First Circuit, "proving likelihood of success on the merits is the 'sine qua non' of a preliminary injunction." Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc., 794 F.3d 168, 173 (1st Cir. 2015) (quoting New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002)). "[I]f the moving party cannot demonstrate that [it] is likely to succeed in [its] quest, the remaining factors become matters of idle curiosity." Id. (quoting New Comm Wireless Servs., 287 F.3d at 9).

### B. Likelihood of Success on the Merits

#### 1. Applicable Legal Principles

The INA permits qualified non-citizen temporary workers to work in the United States if they are sponsored by an employer in a "specialty occupation." 8 U.S.C. § 1101(a)(15)(H)(i)(b). A specialty occupation is "an occupation that requires (A) theoretical and practical application of a body of highly specialized knowledge, and (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." 8 U.S.C. § 1184(i)(1). The related regulation provides:

> Specialty occupation means an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts, and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States.

8 C.F.R. § 214.2(h)(4)(ii).

4

An employer can establish that an employee performs a specialty occupation by showing that the employee's position meets one of four criteria:

> (1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position [("Criteria One")];
>
> (2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree [("Criteria Two")];
>
> (3) The employer normally requires a degree or its equivalent for the position [("Criteria Three")]; or
>
> (4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree [("Criteria Four")].

8 C.F.R. § 214.2(h)(4)(iii)(A). Employers bear the burden of showing that the employee's position meets one or more of these requirements. 8 U.S.C. § 1361.

Parzenn has filed this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.* Under the APA, USCIS' decision denying to issue an H-1B visa to Parzenn is a final agency action that may only be reversed if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). Under this deferential standard, "a court is not to substitute its judgment for that of the agency," Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983), "even if it disagrees with the agency's conclusions," River St. Donuts, LLC v. Napolitano, 558 F.3d 111, 114 (1st Cir. 2009). When applying the arbitrary and capricious standard, courts "are required to determine whether the agency's decision is supported by a rational basis, and if so, [they] must affirm." Id. (citing Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc., 419 U.S. 281, 290 (1974) (noting that "[a]n agency's determination is arbitrary and capricious if the agency lacks a rational basis for making the determination or if the decision was not based on

consideration of the relevant factors")); see also Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43 (stating that an "agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made'" (quoting Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962)).

2. Criteria One: Baccalaureate or Higher Degree or Its Equivalent

The June 27, 2019 denial letter from USCIS stated that the Operations Research Analyst/Consultant position did not meet Criteria One, which requires a finding that a "bachelor's or higher degree or its equivalent is normally the minimum requirement for entry into the particular position." [ECF No. 1-8 at 5–6]. In denying the petition, USCIS relied on the *Occupational Outlook Handbook* ("OOH") profile for operations research analysts. [Id.]. It concluded that

> [A]lthough the OOH indicates that a bachelor's degree is typically required for operations research analyst positions, the position is an occupation that does not normally require at least a baccalaureate level of education in a specific field for entry into the occupation. A wide range of educational backgrounds is suitable for the occupation. There is no apparent standard for how one prepares for a career as an operations research analyst and no requirement for a degree in a specific specialty.

[Id. at 6].

Parzenn argues that USCIS' determination that the Operations Research Analyst/Consultant position did not meet Criteria One was arbitrary and capricious because it "misapprehended and misinterpreted" the OOH and seemed to require a degree in a specific field when a degree may not be available. [ECF No. 17-1 at 5–8]. Defendants contend that USCIS' reliance on the OOH was appropriate and that the OOH profile supports the conclusion that a bachelor's degree in a specific specialty is not a minimum requirement of the position.

Parzenn is unlikely to succeed on the merits on this claim. Courts have regularly interpreted Criteria One in conjunction with other statutory and regulatory language to mean that

6

specialty occupations must require at least a bachelor's degree in a specific specialty. See, e.g., PayJoy, Inc. v. Cuccinelli, No. 19-cv-03977, 2019 WL 3207839, at *3 (N.D. Cal. July 16, 2019) (agreeing with USCIS' interpretation of degree requirement as meaning "one in a specific specialty that is directly related to the proffered position"); Stellar IT Sols., Inc. v. USCIS, No. 18-cv-2015, 2018 WL 6047413, at *8 (D.D.C. Nov. 19, 2018) (observing that the H-1B "regulations must be read in the context of the statutory definition" and noting with approval that USCIS "consistently interprets the term degree in the regulations to mean not just any bachelor's or higher degree, but one in a specific specialty that is directly related to the proffered position" (internal citations omitted)); see also Royal Siam Corp. v. Chertoff, 484 F.3d 139, 147 (1st Cir. 2007) (finding that "a degree requirement in a specific specialty" means "one that relates directly to the duties and responsibilities of a particular position.").

Criteria One read with this gloss requires a petitioner to demonstrate that a bachelor's or higher degree *in a specific specialty* or its equivalent is normally the minimum requirement for entry into the particular position. If a degree in a specific specialty is not offered, a position may still qualify as a "specialty occupation" where an equivalent degree is required. See Tapis Int'l v. INS., 94 F. Supp. 2d 172, 175–76 (D. Mass. 2000) (finding that position of Showroom Manager was a specialty occupation because it required "a bachelor's degree or higher in business administration as well as specialized training or experience in the field of design," which together were considered "equivalent [to] a specialized baccalaureate degree."). Where a position merely requires applicants to have any bachelor's degree or a bachelor's degree in one of a broad range of fields, however, the position "can hardly be considered specialized." See Caremax Inc. v. Holder, 40 F. Supp. 3d 1182, 1187–88 (N.D. Cal. 2014).

7

Here, USCIS referred to the OOH profile of an operations research analyst to determine if a specific bachelor's degree is a minimum requirement for entry into the position. [ECF No. 1-8 at 5–6]. That profile stated that "[a]lthough the typical educational requirement for entry-level positions is a bachelor's degree, some employers may prefer to hire applicants with a master's degree. Because few schools offer bachelor's and advanced degree programs in operations research, analysts typically have degrees in other related fields." [Id. at 6]. Related fields are identified as "other technical or quantitative fields, such as engineering, computer science, analytics, or mathematics." [Id.]. The profile also listed a wide range of coursework that would be useful for the "multidisciplinary field" of operations research, including mathematics, computer science, engineering, economics, and political science. [Id.].[3]

While it is evident from the OOH that a bachelor's degree is a minimum requirement for work in operations research, the OOH also makes clear that a wide variety of educational backgrounds will suffice, including backgrounds in "technical or quantitative" fields generally. In fact, Parzenn represents that Mr. Shah is eligible for the position of Operations Research Analyst/Consultant, but Mr. Shah holds only a Bachelor of Commerce degree and a Masters of Business Administration degree, which are two general-purpose degrees. It was therefore not arbitrary or capricious for USCIS to conclude that the Operations Research Analyst/Consultant position was not a specialty occupation because it did not require candidates to possess a bachelor's degree in a specific specialty or its equivalent. See [id. ("A wide range of educational

---

[3] Parzenn's argument that USCIS did not consider the "complete language" of the OOH is refuted by the face of the denial letter, which includes a larger excerpt from the OOH than Parzenn includes in its brief. See [ECF No. 1-8 at 6; ECF No. 17-1 at 6]. To the extent Parzenn may be asserting that the OOH is not an appropriate source on which USCIS may rely, the First Circuit has discredited this argument. See Royal Siam Corp. v. Chertoff, 484 F.3d 139, 146 (1st Cir. 2007) ("In its review of petitions for nonimmigrant work visas, [US]CIS frequently—and sensibly—consults the occupation descriptions collected in the [OOH].").

8

backgrounds is suitable for the occupation. There is no apparent standard for how one prepares for a career as an operations research analyst and no requirement for a degree in a specific specialty.")]; cf. Irish Help at Home LLC v. Melville, No. 13-cv-00943, 2015 WL 848977, at *5–6 (N.D. Cal. Feb. 24, 2015) (upholding agency's determination that deputy controller position was not a specialty occupation because "the record supports the conclusion that general purpose degrees, such as business administration, would adequately prepare an individual" for the position); Caremax, 40 F. Supp. 3d at 1188–89 (concluding that OOH profile for public relations specialist evidenced that the position was not a specialty occupation because it allowed the required bachelor's degree to be in a number of fields).

3. Criteria Four: The Nature of the Specific Duties of the Position[4]

Parzenn presents two arguments as to why it believes USCIS abused its discretion when concluding that the visa application did not satisfy Criteria Four, which requires a finding that "[t]he nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree." 8 C.F.R. § 214.2(h)(4)(iii)(A). Parzenn first argues that USCIS abused its discretion by discrediting an advisory opinion and then that USCIS abused its discretion by improperly considering the wage level designation on the Labor Condition Application ("LCA") submitted with the H-1B application. Parzenn has not demonstrated a likelihood of success on either ground.

i. Evaluation of Parzenn's Proffered Expert Opinion

In response to USCIS' RFE dated April 26, 2019, Parzenn submitted an advisory opinion by Professor Alan Eisner that concluded that the "duties [of the Operations Research

---

[4] Although there is overlap between Criteria Two and Four, Parzenn proceeds only on a theory that its application met the fourth criteria. See [ECF No. 17-1 at 8].

9

Analyst/Consultant at Parzenn] are so specialized and complex that the[y] require the theoretical and practical application of the highly specialized body of knowledge comprising Operations Research and Management." See [ECF No. 1-7 at 23, 116]. USCIS denied Parzenn's application on June 27, 2019 and explained that it discounted Professor Eisner's advisory opinion as "not probative" of any of the four criteria. [ECF No. 1-8 at 10–11]. Specifically, USCIS explained that:

- "The professor reached [his] conclusion by relying on [Parzenn's] description of the position rather than any specific study of the position at [the] organization."

- "There is no evidence that the professor knew any more about the specific duties of the position than what [Parzenn] provided."

- "The professor does not demonstrate or assert in-depth knowledge of [Parzenn's] business operations or how the duties of the position would actually be performed in the context of [Parzenn's] business. For instance, there is no indication that the professor visited [the] business, observed [its] employees, interviewed them about the nature of their work, or documented the knowledge that they apply on the job."

- "The professor's opinion does not relate the professor's conclusion to specific, concrete aspects of [Parzenn's] business operations so as to demonstrate a sound factual basis for the professor's conclusions about the educational requirements for the proffered position."

- "[T]he professor's opinion is not supported by copies or citations of research material that may have been used."

[Id. at 10]. USCIS added that "[g]iven the professor's limited review of the duties of the position, based largely on the job descriptions furnished by [Parzenn], USCIS gives less weight to the professor's opinion." [Id.].

Parzenn argues that USCIS "irrationally disregarded" Professor Eisner's opinion. [ECF No. 17-1 at 8]. It also contends that it was error for USCIS to disregard the phone interview Professor Eisner conducted with management at Parzenn to gather information related to his opinion. [Id. at 10]. Parzenn further opines that, in doing so, USCIS has created a new standard that requires experts to conduct site-visits and disregarded the guidelines of its *Adjudicator's*

10

*Field Manual*, which does not require site-visits. [Id.]. Parzenn characterizes the lack of independent investigation as "the sole justification for excluding Professor Eisner's opinion" and does not address the other rationales provided by USCIS. [Id. at 11].

In response, Defendants contend that USCIS did not "summarily dismiss" Professor Eisner's opinion and only afforded it "less weight." [ECF No. 20 at 7]. Defendants argue that this was a proper exercise of discretion because "where an opinion is not in accord with other information or is in any way questionable, [USCIS] . . . is not required to accept [and] may give less weight to that evidence." [Id.].

Parzenn is unlikely to succeed on the merits on this claim. USCIS' decision to afford "less weight" to Professor Eisner's opinion and to ultimately conclude that the opinion was "not probative" of the four criteria is unlikely to be found to be arbitrary or capricious or an abuse of discretion, particularly when the decision is viewed in the larger context of the denial letter. Professor Eisner's opinion was provided in support of Criteria Four. See [ECF No. 1-7 at 23, 111–28]. Before even reaching Professor Eisner's opinion, USCIS determined that the duties of the Operations Research Analyst/Consultant position as articulated by Parzenn "were described in generalized and abstract terms that lack sufficient detail" to make the showing required by Criteria Four and that there was no indication that the position would not simply involve "the normal duties of an operations research analyst without any additional specialization or complexity." [ECF No. 1-8 at 10]. USCIS then looked to Professor Eisner's opinion to determine if it could fill in the gaps left by the information provided by Parzenn. [Id.].

Professor Eisner "opined that the duties of the proffered position are so specialized and complex that the knowledge required to perform these duties requires the attainment of a minimum of a bachelor's degree in operations research, management." [Id.]. By his account, he

11

reached this conclusion by reviewing documents provided by Parzenn, which included "a complete position description and a breakdown of the position's specific duties and responsibilities." [ECF No. 1-7 at 111]. He also conducted a phone interview with Akhil Suresh Nair, one of Parzenn's employees and Mr. Shah's co-founder. [Id.]. There is little in the letter to indicate the substance of this phone call except a brief explanation that Mr. Nair told Professor Eisner that a candidate for the position of Operations Research Analyst/Consultant "will be required to understand and document current business processes of the client and filter out the problems and recommend solutions to those problems," and that Parzenn "looks for candidates who posses[s] technical [sic] in Six Sigma, Agile methodology, and management consulting knowledge as well as problem solving abilities typically gained during MBA programs." [ECF No. 1-7 at 116].

USCIS found Professor Eisner's opinion questionable and gave it "less weight" for a variety of reasons stemming from the fact that there was "no evidence that [he] knew any more about the specific duties of the position than what [Parzenn] provided." [ECF No. 1-8 at 10]. These reasons included the lack of any study of the position at Parzenn, or in-depth knowledge of Parzenn's business operations, and the failure to relate his conclusion to concrete aspects of Parzenn's business operations. [Id.]. USCIS also noted that Professor Eisner's opinion was not supported by citations to research material. [Id.]. Parzenn takes issue with USCIS' observation that Professor Eisner did not conduct a site-visit, but it misses the larger conclusion that Professor Eisner's opinion was not supported by information that was substantively different than that underlying the petition. Where USCIS had already found the duties described by Parzenn to be insufficient to meet Criteria Four, it was also reasonable to conclude that Professor Eisner's opinion, based on information from Parzenn, was not probative of Criteria Four,

12

meaning that it did not add to the analysis. In doing so, USCIS explicated the governing law correctly and its decision was based on a plausible rendition of the facts in the record. See Royal Siam, 484 F.3d at 148 ("While the APA authorizes a reviewing court to set aside an agency's 'action, findings, [or] conclusions' if they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' 5 U.S.C. § 706(2)(A), an agency's decision does not trigger that provision as long as it correctly explicates the governing law and turns on a plausible rendition of the facts in the record.").

### ii. Reliance on Identified Wage Level

When USCIS denied Parzenn's H-1B application on June 27, 2019, it "note[d]" Parzenn's designation of the Operations Research Analyst/Consultant position as a "Wage Level I" position on the LCA submitted with the application, which is the lowest of four wage levels.[5] [ECF No. 1-8 at 10]. Parzenn argues that, in doing so, USCIS abused its discretion. [ECF No. 17-1 at 11]. Parzenn further asserts that reliance on a wage level is an "arbitrary and unexplained departure" from USCIS' policy as articulated by the Administrative Appeals Office ("AAO"), which has recognized that "[t]here is no inherent inconsistency between an entry-level position

---

[5] In its discussion of Criteria Two, which overlaps with Criteria Four, USCIS also stated:

> [T]he LCA you submitted certified that the position was a "Wage Level I" position. Such "Wage Level I" certification does not support an argument that the position is complex. . . . The record indicates that you certified to DOL that you were seeking to fill an entry level position . . . and pay the person the lowest prevailing wage possible for an entry level employee. Thus, the LCA does not support your assertion that the proffered position is more complex or unique that only an individual with a bachelor's degree or higher in a specific specialty can qualify for it.

[ECF No. 1-8 at 9].

13

and a specialty occupation."[6] [Id. at 11–12]. Defendants respond that the wage level designation was clearly inconsistent with the proffered position and was but "one of several factors used" to determine whether Parzenn had met its burden of identifying a "specialty occupation." [ECF No. 20 at 8–10].

The Court finds that Parzenn is unlikely to succeed on the merits on this ground. The relevant AAO policy is that wage level designation is a "relevant factor but is not itself conclusive evidence that a proffered position meets the requirements of section 214(i)(1) of the Act."[7] Here, there is no indication that USCIS found that a "Level I wage precludes designation

---

[6] Parzenn additionally argues that "reliance on the DOL's wage level constituted an *ultra vires* action because it usurped the statutory and regulatory authority provided to DOL to exclusively determine appropriate wage levels." [ECF No. 17-1 at 12]. This argument is without merit as USCIS was not determining the wage level, but was instead considering whether the wage level corresponded with the petition. USCIS is required by 20 C.F.R. § 655.705(b) to ensure that an LCA supports the H-1B petition. See 20 C.F.R. § 655.705(b) (stating that "DHS determines whether the petition is supported by an LCA which corresponds with the petition . . ."). "While DOL is the agency that certifies LCA applications before they are submitted to USCIS, DOL regulations note that the Department of Homeland Security (DHS) [through USCIS] . . . is the department responsible for determining whether the content of an LCA filed for a particular Form I-129 actually supports that petition." Petition for a Nonimmigrant Worker Pursuant to Section 101(a)(15)(H)(i)(b) of the INA, 2015 WL 4445163, at *13 (AAO July 1, 2015). As the AAO has explained, "[w]hen comparing . . . the wage level indicated on the LCA to the . . . petition, USCIS does not purport to supplant DOL's responsibility with respect to wage determinations . . . . USCIS' responsibility . . . is to ensure that the content of the DOL-certified LCA 'corresponds with' the content of the H-1B petition." Matter of V-T-, Inc., ID# 4855551, at *1 n.1 (AAO Oct. 16, 2019).

[7] See, e.g., Matter of N-B, ID# 4017684, at *10 n.20 (AAO Oct. 18, 2019) ("We agree that the wage level designation may be a relevant factor but is not itself conclusive evidence that a proffered position meets the requirements of section 214(i)(1) of the Act."); Matter of V-M-, LLC, ID# 5132255, at *7 n.14 (AAO Oct. 3, 2019) ("We note that a low wage-level designation does not preclude a proffered position from classification as a specialty occupation, just as a high wage-level designation does not definitively establish such a classification. In certain occupations (e.g., doctors or lawyers), a Level II position would still require a minimum of a bachelor's degree in a specific specialty, or its equivalent, for entry. . . . That is, a position's wage-level designation may be a relevant factor but is not itself conclusive evidence that a proffered position meets the requirements of section 214(i)(1) of the Act."); Matter of D-B-S-, Inc., ID# 4194541, at *9 n.15 (AAO Sept. 27, 2019) (noting that the AAO "agree[d] that

14

of the job as an H-1B occupation." [ECF No. 17-1 at 13]. Rather, as Defendants observe, the wage level designation was properly considered as one relevant factor, but was not dispositive in deciding that the proffered position was not a specialty occupation. See, e.g., Caremax, 40 F. Supp. 3d at 1189 (finding that USCIS did not abuse its discretion when it found that a public relations specialist was not a "specialty occupation," due in part to petitioner's representation that position was classified with the DOL as Wage Level I).

## C. Irreparable Harm

Because the Court finds that Parzenn has not demonstrated a likelihood of success on the merits, its analysis may conclude there. See Arborjet, Inc., 794 F.3d at 173. The Court notes, however, that even if Parzenn had shown a likelihood of success on the merits, it would likely have been unable to make a sufficient showing of irreparable harm.

In its memorandum of law in support of its motion for a preliminary injunction, Parzenn identified the following irreparable harms: (1) "preventing [Parzenn] from employing Mr. Shah in the United States on critical ongoing projects; (2) "causing Mr. Shah to fall out of valid nonimmigrant status and begin accruing 'unlawful presence'"; (3) loss of "unrecoverable profits, as [Parzenn] will be unable to charge clients for Mr. Shah's services; (4) loss to Parzenn of its co-founder and technical lead; (5) loss to Mr. Shah of unrecoverable wages; and, (6) the possibility that Mr. Shah will be placed in removal proceedings, which could force him to depart the United States. [ECF No. 17-1 at 15–16]. At the status conferences on October 21, 2019 and November 7, 2019 and in its reply brief, Parzenn argued that the company would have to close if

---

the wage level designation may be a relevant factor but is not itself conclusive evidence that a proffered position meets the requirements of section 214(i)(1) of the Act" and explaining that the wage level was "one of other factors we considered under this criteria including whether the record contains sufficient information regarding advertising employers, duties of the position, and whether the postings require at least a bachelor's degree in a specific specialty.").

injunctive relief were not granted. See [ECF No. 22]. The Government responds that economic harm is rarely considered irreparable, that Mr. Shah is not a party to this action, and that, even if he were, the alleged harm to him would not be sufficient to warrant injunctive relief. [ECF No. 20 at 10–11].

As it must, the Court focuses its inquiry on the movant, Parzenn, not on third-parties or non-parties. See CMM Cable Rep., Inc. v. Ocean Coast Props., Inc., 48 F.3d 618, 622 (1st Cir.1995) ("[T]he issuance of a preliminary injunction requires a showing of irreparable harm to the movant rather than to one or more third parties."). "[E]conomic loss alone does not usually rise to the level of irreparable harm which a party must establish to obtain a preliminary injunction." Suero v. Fed. Home Loan Mortg. Corp., No. 13-cv-13014, 2013 WL 6709001, at *7 (D. Mass. Dec. 17, 2013) (quoting Hull Mun. Lighting Plant v. Mass. Mun. Wholesale Elec. Co., 506 N.E.2d 140, 142 (Mass. 1987)). In some cases, however, economic damages may "constitute irreparable harm where the loss threatens the very existence of the movant's business." Id. (quoting Hull Mun. Lighting Plant, 506 N.E.2d at 142); see Kenworth of Bos., Inc. v. Paccar Fin. Corp., 735 F.2d 622, 625 (1st Cir. 1984) (recognizing that "business closure can constitute irreparable harm"); see also hiQ Labs, Inc. v. LinkedIn Corp., 273 F. Supp. 3d 1099, 1105 (N.D. Cal. 2017) ("The threat of being driven out of business is sufficient to establish irreparable harm."); W. Ala. Women's Ctr. v. Miller, 217 F. Supp. 3d 1313, 1334 (M.D. Ala. 2016) ("Business closure clearly qualifies as irreparable harm.").

Parzenn's claim that it will permanently close in the absence of injunctive relief is not supported by the affidavits submitted with its motion for preliminary injunction. For example, Parzenn employee, Mr. Nair, states in his affidavit that Mr. Shah is "an essential worker" whose "absence has been felt by [the company's] client base" and "is impairing ongoing projects and

16

assignments." [ECF No. 17-2]. Mr. Nair further asserts that the company is unable to bill clients for Mr. Shah's services, "will continue to suffer harm in the absence of full resolution," and "will suffer harm possibly forever if Mr. Shah is compelled to depart the United States." [Id.]. Mr. Shah states in his affidavit that he was "specifically assigned" to certain clients who "are now missing my expertise and familiarity with the nature of their work processes and organizations." [ECF No. 17-3]. The claim that the business will close in the absence of injunctive relief is therefore unsupported by the record and cannot constitute a showing of irreparable harm. See Pub. Serv. Co. of N.H. v. Town of W. Newbury, 835 F.2d 380, 383 (1st Cir. 1987) ("Speculative injury does not constitute a showing of irreparable harm.").

### III. CONCLUSION

Accordingly, Parzenn's motion for a preliminary injunction [ECF No. 17] is **DENIED**.

**SO ORDERED.**

November 19, 2019 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE