UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PARZENN PARTNERS, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| KATHY A. BARAN, in her Official Capacity, | * | |
| Director of the California Service Center, U.S. | * | |
| Citizenship and Immigration Services, U.S. | * | |
| Department of Homeland Security; | * | |
| KENNETH CUCCINELLI, in his Official | * | Civil Action No. 19-cv-11515-ADB |
| Capacity, Acting Director, U.S. Citizenship | * | |
| and Immigration Services, U.S. Department of | * | |
| Homeland Security; KEVIN MCALEENAN, | * | |
| in his Official Capacity, Acting Secretary, U.S. | * | |
| Department of Homeland Security; U.S. | * | |
| CITIZENSHIP AND IMMIGRATION | * | |
| SERVICES; and U.S. DEPARTMENT OF | * | |
| HOMELAND SECURITY, | * | |
| | * | |
| Defendants. | * | |
| | * | |

## MEMORANDUM AND ORDER ON
## CROSS MOTIONS FOR SUMMARY JUDGMENT

BURROUGHS, D.J.

Plaintiff Parzenn Partners, LLC ("Plaintiff") challenges the denial of an H-1B

nonimmigrant specialty worker visa ("H-1B visa") petition submitted on behalf of one of its

employees, Dhvanish Shah ("Shah").  Currently pending before the Court is Plaintiff's motion

for summary judgment, [ECF No. 30], and Defendants' cross-motion for summary judgment,

[ECF No. 35].[1]  For the reasons set forth below, Defendants' motion, [ECF No. 35], is

GRANTED, and Plaintiff's motion, [ECF No. 30], is DENIED.

## I.    BACKGROUND

### A.    Factual Background

Plaintiff is a startup business advisory services firm that works with clients from various

industries.  [R. 41, 101].[2]  Shah, a native and citizen of India, is one of Plaintiff's co-founders

and one of its five employees.  [R. 39, 121, 361].  He received a Master of Business

Administration ("MBA") degree from Babson College in May 2018, [R. 324], and also holds a

Bachelor of Commerce degree from Narsee Monjee Institute of Management Studies, [R. 373].

After receiving his MBA, Shah began working for Plaintiff once he was granted a valid F-1 OPT

employment authorization.  [R. 80].

On January 18, 2019, Plaintiff filed a petition with U.S. Citizenship and Immigration

Services ("USCIS") to obtain an H-1B visa for Shah so that he could work as an entry-level

Operations Research Analyst/Consultant for a term of three years.  [ECF No. 37 at 14].  On

February 1, 2019, USCIS issued a Request for Evidence ("RFE") concerning Shah's eligibility

for an H-1B visa after determining that he owned a 50% equity stake in the company.  [ECF No.

---

[1] For ease, the Court refers to Defendant U.S. Citizenship and Immigration Services throughout this memorandum and order when referring to the entity that denied Plaintiff's visa application. Otherwise, the Court references "Defendants" collectively, which refers to Kathy A. Baran, Director of the California Service Center; Kenneth Cuccinelli, Acting Director of U.S. Citizenship and Immigration Services; Kevin McAleenan, Acting Secretary, U.S. Department of Homeland Security; U.S. Citizenship and Immigration Services; and U.S. Department of Homeland Security.

[2] References to the Administrative Record for Plaintiff's April 2019 visa petition, which was filed electronically at ECF No. 47, are cited as "[R. __ ]."  To avoid confusion, references to the Administrative Record for Plaintiff's January 2019 visa petition, which was filed electronically at ECF No. 37, are cited as "[ECF No. 37]."

37-6 at 22].  Plaintiff timely complied with the RFE.  [Id. at 37].  On March 11, 2019, USCIS

denied Plaintiff's petition because it found that Shah owned or controlled the petitioning

company.  [ECF No. 37 at 8–11].

On April 11, 2019, Plaintiff filed a second petition for an H-1B visa for Shah.

[R. 37–49].  On April 26, 2019, USCIS issued an RFE regarding *inter alia* whether Shah's

position as an Operations Research Analyst/Consultant qualified as a "specialty occupation"

within the meaning of the Immigration and Nationality Act ("INA").  [R. 777–88].  On June 13,

2019, Plaintiff timely complied with the RFE.  [R. 813–35].  On June 27, 2019, USCIS denied

Plaintiff's petition because Plaintiff had failed to demonstrate that the Operations Research

Analyst/Consultant position was a "specialty occupation."  [R. 6].

### B.      Procedural Background

On July 11, 2019, Plaintiff initiated this action.  [ECF No. 1].  Defendants answered the

complaint on September 13, 2019.  [ECF No. 14].  On October 16, 2019, Plaintiff filed a motion

for a preliminary injunction.  [ECF No. 17].  After briefing and oral argument, [ECF Nos. 20, 22,

23], the Court denied the motion on November 19, 2019, [ECF No. 25].  The parties fully briefed

cross motions for summary judgment, [ECF Nos. 30, 35, 38, 39, 40, 41], which are now before

the Court.

## II.     LEGAL STANDARD

Plaintiff has filed this action pursuant to the Administrative Procedure Act ("APA"),

5 U.S.C. § 701, *et seq.*  "The summary judgment 'rubric' . . . 'has a special twist in the

administrative law context.'"  Int'l Junior Coll. of Bus. & Tech., Inc. v. Duncan, 802 F.3d 99,

106 (1st Cir. 2015) (quoting Associated Fisheries of Me., Inc. v. Daley, 127 F.3d 104, 109 (1st

Cir. 1997)).  Ordinarily, summary judgment may be granted where the moving party shows "that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In the context of the APA, a motion for summary judgment is "simply a vehicle to tee up a case for judicial review" on the merits of the APA claim. Bos. Redevelopment Auth. v. Nat'l Park Serv., 838 F.3d 42, 47 (1st Cir. 2016).

Even at the summary judgment stage, judicial review of an APA claim "is narrow" because "the APA standard affords great deference to agency decisionmaking and because the [agency's] action is presumed valid . . . ." Associated Fisheries, 127 F.3d at 109. Under this deferential standard of review, a court may set aside an administrative action only if that action is "arbitrary, capricious, an abuse of discretion, or otherwise contrary to law." 5 U.S.C. § 706(2)(A). Therefore, at summary judgment, the Court "must review an agency action not to determine whether a dispute of fact remains but, rather, to determine whether the agency action was" arbitrary, capricious, an abuse of discretion, or contrary to law. Bos. Redevelopment Auth., 838 F.3d at 47. The reviewing court's task "is only to determine whether the [agency's] decision . . . was consonant with [its] statutory powers [and] reasoned . . . ." Associated Fisheries, 127 F.3d at 109. In addition, "[w]here agency action is taken upon an administrative record, it must (with some exceptions) be reviewed based on that record." Mass. ex rel. Div. of Marine Fisheries v. Daley, 170 F.3d 23, 28 n.4 (1st Cir. 1999); see 5 U.S.C. § 706.

"The APA 'sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts'" and "requires agencies to engage in 'reasoned decisionmaking . . . .'" Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 140 S. Ct. 1891, 1905 (2020) (first quoting Franklin v. Massachusetts, 505 U.S. 788, 796 (1992); then quoting Michigan v. EPA, 576 U.S. 743, 750 (2015)). When an agency action is challenged as abusing the agency's discretion, "[a] reviewing court may decide only whether this discretion

was exercised rationally and consistently with the standards set by Congress, and may not substitute its own judgment as to values and priorities . . . ." <u>Maine v. Kreps</u>, 563 F.2d 1052, 1055 (1st Cir. 1977) (citation omitted).

Similarly, when an agency decision is challenged as being arbitrary and capricious, the agency decision must reflect that the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983) (citation omitted).  A reviewing court may not substitute its own judgment for the agency's, but instead must "assess only whether the decision was 'based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" <u>Regents</u>, 140 S. Ct. at 1905 (quoting <u>Citizens to Preserve Overton Park, Inc. v. Volpe</u>, 401 U.S. 402, 416 (1971)). When applying the arbitrary and capricious standard, courts "are required to determine whether the agency's decision is supported by a rational basis, and if so, [they] must affirm." <u>River St. Donuts, LLC v. Napolitano (River St. I)</u>, 558 F.3d 111, 114 (1st Cir. 2009) (citing <u>Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.</u>, 419 U.S. 281, 290 (1974); <u>see</u> <u>Carcieri v. Kempthorne</u>, 497 F.3d 15, 43 (1st Cir. 2007) (noting that "[a]n agency's determination is arbitrary and capricious if the agency lacks a rational basis for making the determination or if the decision was not based on consideration of the relevant factors"), <u>rev'd on other grounds sub nom.</u> <u>Carcieri v. Salazar</u>, 555 U.S. 379 (2009).

"This is a highly deferential standard of review—and where, as here, an agency is called upon both to interpret regulations that it has promulgated and to find the facts, deference is doubly desirable." <u>Royal Siam Corp. v. Chertoff</u>, 484 F.3d 139, 148 n.6 (1st Cir. 2007). "Adjudication of these claims requires the district court to determine only whether the [agency's]

decision making process was deficient, not whether [its] decision was correct."  Sasen v. Mabus,

No. 16-cv-10416, 2017 U.S. Dist. LEXIS 44436, at *14 (D. Mass. Mar. 27, 2017) (quoting

Piersall v. Winter, 507 F. Supp. 2d 23, 33 (D.D.C. 2007)), aff'd sub nom. Sasen v. Spencer, 879

F.3d 354 (1st Cir. 2018).  Further, in the immigration context, USCIS "is accorded broad

discretion in granting or denying visa preference petitions and a reviewing court must generally

defer to its determinations."  River St. Donuts, LLC v. Chertoff, No. 06-cv-40049, 2007 U.S.

Dist. LEXIS 56823, at *4–5 (D. Mass. Aug. 3, 2007), aff'd, 558 F.3d 111.

## III.    DISCUSSION

Plaintiff raises five grounds in arguing that USCIS's denial of the April 11, 2019 H-1B

petition was unlawful, arbitrary, and capricious: (1) USCIS is estopped from raising new reasons

for denying the April 2019 petition because it did not mention those reasons when denying

Plaintiff's January 2019 petition; (2) USCIS improperly relied on the Occupational Outlook

Handbook ("OOH") in making its decision and applied an incorrect standard as to Criterion One;

(3) USCIS applied a heightened evidentiary standard by refusing to consider a substantial portion

of the record as to Criteria Two and Four; (4) USCIS improperly relied on the Department of

Labor's ("DOL") proffered wage level to deny Plaintiff's petition; and (5) USCIS failed to

engage in a meaningful evidentiary review as evidenced by the agency's use of "boilerplate

language" in its decision.  [ECF No. 30-1 at 19–20].  Defendants dispute these claims and also

state that USCIS's decision was reasonable based on Plaintiff's submissions and the record.

[ECF No. 36 at 7].

### A.    H-1B Overview

The INA permits qualified, non-citizen, temporary workers to work in the United States

if they are sponsored by an employer in a "specialty occupation."  8 U.S.C.

§ 1101(a)(15)(H)(i)(b).  A specialty occupation is "an occupation that requires (A) theoretical and practical application of a body of highly specialized knowledge, and (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States."  8 U.S.C. § 1184(i)(1).  The related regulation defines a specialty occupation as

> an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts, and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States.

8 C.F.R. § 214.2(h)(4)(ii).

An employer can establish that an employee performs a specialty occupation by showing that the employee's position meets one of four criteria:

> (1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position [("Criterion One")];
>
> (2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree [("Criterion Two")];
>
> (3) The employer normally requires a degree or its equivalent for the position [("Criterion Three")]; or
>
> (4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree [("Criterion Four")].

8 C.F.R. § 214.2(h)(4)(iii)(A).  Employers bear the burden of showing that the employee's position meets one or more of these requirements.  8 U.S.C. § 1361.

### B.    Grounds One and Five

With regard to its first ground, Plaintiff argues that USCIS is estopped from raising any reasons for denying the April 2019 petition that were not articulated in its denial of Plaintiff's earlier, January 2019 petition because the petitions were substantially similar.  [ECF No. 30-1 at 20–22].  Plaintiff cites no case law in support of this contention.  See [id.].  Defendants argue that USCIS is not estopped from addressing an issue of eligibility not mentioned in a previous decision.  [ECF No. 36 at 15].  The First Circuit has stated that "estoppel rarely will be invoked against the federal government.  That principle holds fast in immigration cases." Royal Siam Corp., 484 F.3d at 148 (citations omitted).  Furthermore, even if estoppel were appropriate against USCIS, "in order for collateral estoppel to be invoked in a given case, there must have been a prior judgment between the parties that is sufficiently firm to be accorded conclusive effect and the parties must have had a full and fair opportunity to litigate the issues in the prior suit."  See Matter of Fedorenko, 19 I. & N. Dec. 57, 61 (B.I.A. 1984) (footnote omitted).  Given that USCIS denied the January 2019 petition based on a separate ground of ineligibility and discussed no additional grounds for the decision, [ECF No. 37 at 8–11], the issue was not adjudicated and collateral estoppel does not bar USCIS from denying the April 2019 petition for a different reason.

As a fifth ground of error, Plaintiff argues that USCIS's use of "boilerplate language" was an abuse of discretion and indicates that the agency failed to engage in a meaningful review of Plaintiff's petition.  [ECF No. 30-1 at 20].  This claim is without merit.  First, the use of "boilerplate" language is a widespread practice among government agencies as well as courts when applying uniform standards of review to different sets of facts.  See Seila Law LLC v. Consumer Fin. Protection Bureau, 140 S. Ct. 2183, 2209 (2020) (analyzing the use of boilerplate

language in the context of the Dodd-Frank statute, noting, "boilerplate is boilerplate for a reason—because it offers tried-and-true language to ensure a precise and predictable result"). Such an approach can help USCIS to ensure consistency and fairness in its consideration of petitions and, given the vast number of petitions it must consider, USCIS can hardly be expected to produce novel ways of phrasing the same legal standards for each petition.

Second, the administrative record demonstrates that USCIS engaged in a meaningful analysis of the evidence presented by Plaintiff with reference to the governing legal standard. [R. 6–15 (decision denying April 2019 petition)].  For example, in discussing Criterion Two, which, in part, requires a showing that the degree requirement is common to the industry in parallel positions among similar organizations, 8 C.F.R. § 214.2(h)(4)(iii)(A)(2), USCIS analyzed whether the five job postings Plaintiff submitted satisfied the Criterion.  [R. 12].  In determining that the submitted postings were insufficient, USCIS noted that Plaintiff did not establish that the other employers were similar to Plaintiff.  [Id.].  In addition, USCIS observed that one of the postings did not even require a bachelor's degree.  [Id.].  Furthermore, USCIS included suggestions of other evidence that Plaintiff could have submitted that would have strengthened its claim, such as documentation from industry-related professional associations or affidavits from other firms stating that such businesses regularly employ only individuals with specialty degrees.  [Id.].

Thus, although USCIS may have used boilerplate language, its decision nonetheless reflects a careful consideration of the evidence and the application of the appropriate legal standards.  See [R. 6–15].  The Court therefore does not find that the agency abused its discretion.  See Associated Fisheries, 127 F.3d at 110 ("Having carefully reviewed the record,

we cannot say that the [agency] exercised [its] discretion in an irrational, mindless, or whimsical manner.").

### C.      Grounds Two, Three, and Four

The Court addresses Plaintiff's remaining grounds for relief within the context of the relevant regulation's criteria for establishing that a position is a specialty occupation.  See supra, Section III.A; see also 8 C.F.R. § 214.2(h)(4)(iii)(A).  Plaintiff challenges USCIS only as to its determinations under Criteria One, Two, and Four.[3]  See generally [ECF No. 30-1].  Again, Criterion One requires a petitioner to demonstrate that a baccalaureate or higher degree or its equivalent is typically the minimum requirement for the position.  8 C.F.R. § 214.2(h)(4)(iii)(A).  Criterion Two requires a petitioner to show that the degree requirement is common in the industry for parallel positions at similar organizations, or that the position is so complex and unique that it can be performed only by someone with a degree.  Id.  Lastly, Criterion Four requires a petitioner to demonstrate that the types of duties required by the position are so specialized and complex that the required knowledge is typically associated with the attainment of a baccalaureate or higher degree.  Id.

### 1.      Criterion One

Plaintiff argues that Defendants arbitrarily and capriciously determined that the position Plaintiff offered to Shah did not meet Criterion One.  [ECF No. 30-1 at 22].  In support of this argument, Plaintiff contends that USCIS's reliance on the OOH was inappropriate, that USCIS should have looked to other sources in support of its decision, and that USCIS improperly

---

[3] Plaintiff does not contest USCIS's decision with regard to Criterion Three, which requires a showing that the employer typically requires a degree or its equivalent for the position.  See 8 C.F.R. § 214.2(h)(4)(iii)(A); [R. 14 (stating that Plaintiff did not submit any evidence for this criterion)].  See generally [ECF No. 30-1].

interpreted the OOH and relevant regulations to require a singular degree in a specialty.  [Id. at

22–23, 26, 29].  Defendants maintain that it was appropriate for USCIS to consider the OOH

position description and that USCIS's June 2019 decision reflects a rational connection between

the OOH position description and the agency's conclusion about the position.  [ECF No. 36 at 9,

16].

a.    Appropriate Resources for Consideration

Plaintiff contends that USCIS arbitrarily and capriciously relied on the OOH to make its

decision.  [ECF No. 30 at 22].

The statute governing H-1B petitions states that USCIS must consider all evidence

submitted with a petition.  8 C.F.R. § 103.2(b)(1) ("Any evidence submitted in connection with a

[petition] is incorporated into and considered part of the request.").  Plaintiff itself submitted the

OOH profile for operations research analysts to USCIS in conjunction with its petition, and

therefore USCIS was required to consider it.  [R. 392–401].

In support of its position, Plaintiff relies on a case from the District of Columbia, 3Q

Digital, Inc. v. U.S. Citizenship & Immigration Services, which found that USCIS was "arbitrary

and capricious" when it relied on the "OOH over the O*NET report" in denying an H-1B

petition.  No. 1:19-cv-00579, 2020 U.S. Dist. LEXIS 39558, at *14 (D.D.C March 6, 2020).[4]

Plaintiff would like the Court to adopt this approach, but it is not required by the First Circuit,

which has determined that the "choice of what reference materials to consult is quintessentially

---

[4] The O*NET Online Library is an educational resource from the DOL that includes job
descriptions and general prerequisites (including the types of required educational backgrounds)
for nearly 1,000 occupations in the United States.  About O*NET, ONetCenter.org,
https://www.onetcenter.org/overview.html#:~:text=Central%20to%20the%20project%20is,cover
ing%20the%20entire%20U.S.%20economy (last visited Sept. 25, 2020).

within an agency's discretion . . . ."  Royal Siam Corp., 484 F.3d at 146.  Moreover, the First

Circuit has upheld USCIS's use of the OOH in its H-1B determinations.  See id.  ("[I]n its review

of petitions for nonimmigrant work visas, [US]CIS frequently—and sensibly—consults the

occupation descriptions collected in the [OOH].").  USCIS therefore acted within its discretion in

referencing the OOH to determine if the Operations Research Analyst/Consultant position was a

specialty occupation.

Plaintiff also argues that USCIS should have instead relied on the DOL O*NET Online

job posting for the same position.  [ECF No. 30-1 at 29–30].  Just as USCIS is bound to consider

the evidence submitted with a petition, it is not required to consider other extrinsic evidence not

submitted with the petition, including evidence submitted after-the-fact during subsequent

litigation.  See 8 C.F.R. § 103.2(b)(1).  Plaintiff did not submit the O*NET reference materials

with its petition, and as a result, USCIS did not act arbitrarily and capriciously when it did not

consider this information before denying the petition.

b. No Singular Degree Requirement

USCIS's decision stated that the Operations Research Analyst/Consultant position did not

meet Criterion One, which requires a finding that a "bachelor's or higher degree or its equivalent

is normally the minimum requirement for entry into the particular position."  [R. 9–10].  As

noted above, in evaluating Criterion One, USCIS referenced the OOH profile for operations

research analysts, which Plaintiff provided.  [Id.].  Based on the OOH description of the

educational requirements for this type of position, USCIS concluded that

> although the OOH indicates that a bachelor's degree is typically required for
> operations research analyst positions, the position is an occupation that does not
> normally require at least a baccalaureate level of education in a specific field for
> entry into the occupation.  A wide range of educational backgrounds is suitable for
> the occupation.  There is no apparent standard for how one prepares for a career as

an operations research analyst and no requirement for a degree in a specific specialty.

[R. 10].

USCIS's determination, consistent with case law from this circuit and others, indicates that the degree requirement cannot be so general as to dilute the nature of the "specialty occupation" requirement.  The First Circuit has observed that "a degree requirement in a specific specialty—one that relates directly to the duties and responsibilities of a particular position—is given more weight by the agency than a requirement for a generic degree.  This gloss is mandated by the language of the statute itself."  Royal Siam Corp., 484 F.3d at 147 (citations omitted).  Accordingly, Criterion One requires a petitioner to demonstrate that a bachelor's or higher degree in a specific specialty (or its equivalent) is normally the minimum requirement for entry into the particular position.  See id.  Other courts agree that "[a] position that requires applicants to have any bachelor's degree, or a bachelor's degree in a large subset of fields, can hardly be considered specialized."  CareMax Inc. v. Holder, 40 F. Supp. 3d 1182, 1187–88 (N.D. Cal. 2014); see also 3Q Digital, 2020 U.S. Dist. LEXIS 39558, at *10 ("[A]lthough subclause 1 is not limited to one specific major, it can be inferred [from the regulations in conjunction with the governing statute] that there must still be a relevant connection between the field of study and the demands of the position."); Stellar IT Sols., Inc. v. USCIS, No. 18-cv-02015, 2018 U.S. Dist. LEXIS 196284, at *24–25 (D.D.C. Nov. 19, 2018) (observing that the H-1B "regulations must be read in the context of the statutory definition" and noting with approval that USCIS "consistently interprets the term degree in the regulations to mean not just any bachelor's or higher degree, but one in a specific specialty that is directly related to the proffered position" (internal citations omitted)); Irish Help at Home LLC v. Melville, No. 13-cv-00943, 2015 U.S. Dist. LEXIS 22122, at *17 (N.D. Cal. Feb. 24, 2015) (upholding agency's determination that

deputy controller position was not a specialty occupation because "the record supports the conclusion that general purpose degrees, such as business administration, would adequately prepare an individual" for the position).

As Defendants assert, "Plaintiff appears to be arguing that USCIS is trying to impose a requirement that a specific subspecialty in one particular field is required to document a specialty occupation, which is not the case . . . ." [ECF No. 40 at 4].[5]   USCIS's decision makes clear that, although it identified several reasons for reaching its Criterion One conclusion, USCIS did not indicate that Plaintiff could meet Criterion One only if the Operations Research Analyst/Consultant position required only one specific type of degree.  See, e.g., [R. 10 ("A wide range of educational backgrounds is suitable for the occupation.  There is no apparent standard for how one prepares . . . .")].  In addition, USCIS cited to portions of the OOH description that indicated that "operations research is a multidisciplinary field with a wide variety of applications," such that coursework in engineering, economics, or political science might be appropriate.  [Id.].  Rather than stating that the position must require one specific type of degree to meet Criterion One, USCIS's decision states that the position must require "*a* specific specialty"—something (anything) other than general degrees such as Shah's degrees in business. [Id.; ECF No. 36 at 9 ("Plaintiff cannot successfully assert that the OOH profile that permits

---

[5] Plaintiff seems to be aligning itself with several recent decisions from district courts outside of this circuit in which courts found that USCIS could not read the regulations to require a singular degree or subspecialty for a position.  See [ECF No. 38 at 2–5 (discussing InspectionXpert Corp. v. Cuccinelli, No. 1:19-cv-00065, 2020 U.S. Dist. LEXIS 38228, at *69 (M.D.N.C. Mar. 5, 2020) and RELX, Inc. v. Baran, 397 F. Supp. 3d 41, 55 (D.D.C. 2019)].  Yet the facts in those cases, including the materials USCIS referenced in reaching its decisions, are distinct.  In addition, the court in InspectionXpert recognized that a general degree requirement was insufficient under the regulation.  See 2020 U.S. Dist. LEXIS 38228, at *69 (recognizing that "the history and structure of the H-1B Regulation . . . undercut the notion that [Criterion One] imposes simply a generalized degree requirement.").

degrees in related fields permits his degrees for this occupation.")]; see Royal Siam Corp., 484 F.3d at 147 (stating that "a degree requirement in a specific specialty—one that relates directly to the duties and responsibilities of a particular position—is given more weight by the agency than a requirement for a generic degree"); see also CareMax, 40 F. Supp. 3d at 1188–89 (concluding that OOH profile for public relations specialist indicated that the position was not a specialty occupation because the required bachelor's degree could be in a number of fields).

It was therefore not arbitrary or capricious for USCIS to conclude that the Operations Research Analyst/Consultant position was not a specialty occupation because it did not require candidates to possess a degree in a specific specialty or its equivalent.  See Royal Siam Corp., 484 F.3d at 147; see also River St. I, 558 F.3d at 114 (stating that courts must affirm an agency decision when it "is supported by a rational basis").

2.    Criterion Two

Plaintiff asserts that USCIS "refus[ed] to consider a substantial portion of the record," including Plaintiff's chart listing the job duties of its Operations Research Analyst/Consultant position, and that USCIS improperly relied on the DOL's wage level classification to determine whether the position was specialized.  [ECF No. 30-1 at 30, 45].  Defendants contend that USCIS did consider Plaintiff's description of the position's duties, and reasonably concluded that this evidence was insufficient to establish that the Operations Research Analyst/Consultant position is so complex or unique that it can be performed only by a person with a specialty degree.  [ECF No. 36 at 12].  Defendants also assert that USCIS's consideration of the DOL's wage level classification was both warranted and required by regulations and the Administrative Appeals Office's ("AAO") policy.  [Id. at 18–19].

a.      Job Duties

Plaintiff submitted a chart outlining the duties of its Operations Research

Analyst/Consultant position.  [R. 66–76; R. 818–28; ECF No. 30-1 at 31–37].  USCIS included

these job duties in its decision, [R. 8], and indicated that it had reviewed the duties but found

them to be "generic in nature" and lacking in "detail as to the unique or complex nature of the

proffered position," [R. 12].  This conclusion is supported by the record.  Plaintiff's descriptions

are vague, including, for example, that its Operations Research Analyst/Consultant will "analyze

information," "prepare reports," and "develop business methods," with no detail as to specialized

tasks or methods that a person in this position would use to complete those duties.  [ECF No.

30-1 at 31–37].  One slightly more detailed description indicates that the Operations Research

Analyst/Consultant will "formulate and apply operations and mathematical models," but does not

specify which models or provide any substantive information about this task.  [Id. at 32].

USCIS's decision demonstrates that it reviewed and analyzed the job duties Plaintiff provided

and that it was not arbitrary or capricious in determining that the duties lacked sufficient detail to

support a finding that they required "highly specialized knowledge in a specific specialty."

[R. 13].  See Int'l Junior Coll., 802 F.3d at 106–07 (stating that when reviewing APA summary

judgment motions, the Court "focus[es] on whether the agency examined the relevant data and

articulated a satisfactory explanation for its action including a rational connection between the

facts found and the choice made" (quoting Sistema Universitario Ana G. Mendez v. Riley, 234

F.3d 772, 777 (1st Cir. 2000))).

b.      Wage Level

With its April 11, 2019 petition, Plaintiff submitted a required Labor Condition

Application ("LCA"), which certified that the Operations Research Analyst/Consultant position

was classified as "Wage Level I."  [R. 51–56].  Level I wage rates correspond to entry-level

positions for "employees that have only a basic understanding of the occupation . . . and perform

routine tasks that require limited, if any, exercise of judgment."  Dept. of Labor, Emp't and

Training Admin. Prevailing Wage Determination Policy Guidance at 7 (rev. Nov. 2009),

https://www.flcdatacenter.com/download/NPWHC_Guidance_Revised _11_2009.pdf.  Plaintiff

claims that USCIS abused its discretion in concluding that the Wage Level I classification

indicated that the Operations Research Analyst/Consultant position was not complex enough to

require a bachelor's degree or higher in a specific specialty.  [ECF No. 30 at 45]; see [R. 13].

Plaintiff further argues that USCIS's reliance on the wage level is an "arbitrary departure" from

AAO policy.  [ECF No. 30 at 46].  Defendants counter these assertions, first noting that since the

wage level determination was submitted with the LCA in support of the petition, USCIS was

required by regulation to consider it.  [ECF No. 36 at 18]; 8 C.F.R. § 103.2(b)(1)) ("Any

evidence submitted in connection with a benefit request is incorporated into and considered part

of the request.").  Second, Defendants argue that Plaintiff is misinterpreting the relevant AAO

policy on whether USCIS may consider wage level classifications.  [ECF No. 36 at 18–19].

Plaintiff responds that the AAO policy states that USCIS cannot rely on a DOL wage

level as a factor in whether a position is a specialty occupation.  [ECF No. 30 at 45–46 (citing

Matter of B-C, Inc., ID # 1139516, 2018 Immig. Rptr. LEXIS 858 (A.A.O. Jan. 25, 2018))].

While Matter of B-C, Inc. does caution that a Wage Level I designation does not *per se* mean

that an entry level position cannot be a specialty occupation, the ruling explicitly states that

"[w]age levels are relevant" and USCIS may consider wage levels as one factor among many to

determine the nature of the occupation.  2018 Immig. Rptr. LEXIS 858, at *5.  This

interpretation of the use of wage levels in H-1B determinations is consistent across other AAO

decisions.  See, e.g., Matter of N-B, ID# 4017684, 2019 Immig. Rptr. LEXIS 6863, at *33 n.20

(A.A.O. Oct. 18, 2019) ("We agree that the wage level designation may be a relevant factor but

is not itself conclusive evidence that a proffered position meets the requirements of section

214(i)(1) of the Act."); Matter of D-B-S-, Inc., ID# 4194541, 2019 Immig. Rptr. LEXIS 6487, at

*28–29 n.15 (A.A.O. Sept. 27, 2019) (noting that the AAO "agree[d] that the wage level

designation may be a relevant factor but is not itself conclusive evidence that a proffered position

meets the requirements of section 214(i)(1) of the Act" and explaining that the wage level was

"one of other factors we considered under this criteria including whether the record contains

sufficient information regarding advertising employers, duties of the position, and whether the

postings require at least a bachelor's degree in a specific specialty").  Moreover, as Defendants

note, federal regulations permit and even require USCIS to consider the wage level

determination Plaintiff submitted.  8 C.F.R. § 103.2(b)(1) ("Any evidence submitted in

connection with a benefit request is incorporated into and considered part of the request.").

Furthermore, by regulation USCIS is required to ensure that an LCA supports an H-1B petition.

20 C.F.R. § 655.705(b) (stating that "DHS determines whether the petition is supported by an

LCA which corresponds with the petition . . .").

        When considering the USCIS's decision as a whole, it is evident that the agency did not

rely solely on the wage level designation as the determinative factor in concluding that the

proffered position is not so complex or unique as to constitute a specialty occupation.  See

[R. 12–13].  Instead, the wage level designation was one of many factors USCIS discussed in

reaching its decision.  See generally [R. 6–15].  USCIS's consideration of the wage level, which

was consistent with administrative law, was not, as Plaintiff argues, an "arbitrary and

unexplained departure from the position of the AAO."  [ECF No. 30 at 46]; see Matter of V-M-,

LLC, ID# 5132255, 2019 Immig. Rptr. LEXIS 7985, at *21–22 n.14 (AAO Oct. 3, 2019) ("We

note that a low wage-level designation does not preclude a proffered position from classification

as a specialty occupation, just as a high wage-level designation does not definitively establish

such a classification.  In certain occupations (e.g., doctors or lawyers), a Level II position would

still require a minimum of a bachelor's degree in a specific specialty, or its equivalent, for

entry. . . .  That is, a position's wage-level designation may be a relevant factor but is not itself

conclusive evidence that a proffered position meets the requirements of section 214(i)(1) of the

Act.").  In using the wage level as one relevant—but not dispositive—factor, USCIS did not

abuse its discretion.  See, e.g., CareMax, 40 F. Supp. 3d at 1189 (holding that USCIS did not

abuse its discretion by considering the DOL wage level classification when it determined a

public relations specialist was not a specialty occupation).

Plaintiff again argues, as it did in its motion for preliminary injunction, that USCIS's

"reliance on the DOL's wage level constituted an *ultra vires* action because it usurped the

statutory and regulatory authority provided to DOL to exclusively determine appropriate wage

levels."  [ECF No. 30-1 at 46]; see [ECF No. 17-1 at 12].  As the Court found in its Order on the

preliminary injunction motion, this argument is without merit as USCIS was not determining the

wage level, as Plaintiff suggests, but was instead considering whether the wage level Plaintiff

provided supported the petition.  "While DOL is the agency that certifies LCA applications

before they are submitted to USCIS, DOL regulations note that the Department of Homeland

Security (DHS) [through USCIS] . . . is the department responsible for determining whether the

content of an LCA filed for a particular Form I-129 actually supports that petition."  Petition for

a Nonimmigrant Worker Pursuant to Section 101(a)(15)(H)(i)(b) of the INA, 2015 Immig. Rptr.

LEXIS 27177, at *43 (A.A.O. July 1, 2015).  As the AAO has explained, "[w]hen assessing the

wage level indicated on the LCA, USCIS does not purport to supplant DOL's responsibility with respect to wage determinations . . . .  USCIS' responsibility . . . is to ensure that the content of the DOL-certified LCA 'corresponds with' the content of the H-1B petition." Matter of B-C, Inc., 2018 Immig. Rptr. LEXIS 858, at *3.  In light of this, Plaintiff's contention that USCIS should have confirmed only that an LCA had been submitted, without taking the information it provides into consideration, lacks support.  See [ECF No. 30-1 at 47 (citing the Adjudicator's Field Manual)].  As a result, the Court finds that USCIS's decision reflects its consideration of the relevant factors and demonstrates reasoned decision-making.  See Regents, 140 S. Ct. at 1905.

### 3.    Criterion Four

In response to USCIS's RFE dated April 26, 2019, Plaintiff submitted an advisory opinion by Professor Alan Eisner.  [R. 777; R. 921–27].  Plaintiff argues that USCIS abused its discretion when it "irrationally and inexplicably disregarded" Eisner's opinion.  [ECF No. 30-1 at 42].  Defendants argue that USCIS did not disregard the opinion, but rather gave it "less weight," which was within its discretion to do.  [ECF No. 36 at 13–14].

In his opinion, Eisner concluded that the "duties [of Plaintiff's Operations Research Analyst/Consultant] are so specialized and complex that the[y] require the theoretical and practical application of the highly specialized body of knowledge comprising Operations Research and Management."  See [R. 926].  USCIS indicated that Eisner's opinion appeared to rely on information provided by Plaintiff rather than on Eisner's understanding of the specific duties of the position, [R. 14], and determined that it was "not probative" as to any of the four criteria, [R. 15].

As noted above, though regulations require that USCIS consider all evidence submitted in conjunction with a petition, 8 C.F.R. § 103.2(b)(1), USCIS has discretion to reject or give less

weight to an expert opinion if it "is not in accord with other information or is in *any way* questionable." Matter of Caron Int'l, 19 I. & N. Dec. 791, 795 (Comm'r 1988) (emphasis added). Courts have upheld this deferential standard, holding that USCIS's rejection or discounting of expert opinions is not arbitrary or capricious when the opinions are brief and conclusory or based on job descriptions provided by the employer rather than personal knowledge or further investigation. Royal Siam Corp., 484 F.3d at 147 (stating that USCIS reasonably discounted plaintiff's expert opinion because it was a "one-paragraph statement furnished by a single restauranteur at [plaintiff's] request"); Taylor Made Software, Inc. v. Cuccinelli, No. 19-cv-00202, 2020 U.S. Dist. LEXIS 58609, at *20–21 (D.D.C. Mar. 31, 2020) (noting that USCIS acted reasonably when it disregarded plaintiff's expert opinion which relied on plaintiff's description of the position, did not rely on any specific study of the position, and did not demonstrate enough knowledge about how the duties of the position would be performed); 3Q Digital, 2020 U.S. Dist. LEXIS 39558, at *21 (finding that USCIS did not act arbitrarily in rejecting a conclusory expert opinion that was "inherently unreliable" as it was based on the same insufficient job description that plaintiff had submitted with its visa application); Sagarwala v. Cissna, 387 F. Supp. 3d 56, 65–66 (D.D.C. 2019) (stating that USCIS was not required to accept the plaintiff's expert opinion because "the expert provided his 'professional opinion' in the form of conclusory, unsubstantiated statements").

In deciding to give "less weight" to Eisner's opinion, USCIS found his lack of "in-depth knowledge of [Plaintiff's] business operations or how the duties of the position would actually be performed in the context of [the] business" problematic. [R. 14]. USCIS went the extra step of providing examples of things that Eisner could have discussed or done to evidence or develop a more in-depth knowledge of the requirements of the position, such as visiting the business,

observing employees on-site, interviewing other employees about the nature of their duties, and

providing some documentation of the specialized knowledge needed for the job.  [Id.].

Additionally, USCIS noted that Eisner failed to relate his conclusions to concrete aspects of

Plaintiff's business operations or support his conclusions with citations to research material.

[Id.].  Most notably, USCIS discounted Eisner's opinion because it relied heavily on the same

job description Plaintiff provided with the underlying petition—evidence which, earlier in its

decision, USCIS determined was itself insufficient because it was vague and generic.  [Id.]; see

supra, Section III.C.2.a (discussing Plaintiff's descriptions of the position's duties).

USCIS's conclusions regarding Eisner's opinion find support in the opinion itself.  Eisner

provides generic descriptions of analytical and modeling methods that are not clearly tied to

Plaintiff's business or clients beyond Eisner's comments that "the proposed Operations Research

Analyst/Consultant position will be expected to" perform those tasks.  [R. 925].  See generally

[R. 924–26].  Further, although USCIS provided examples of additional tasks that Eisner could

have performed to make his opinion more robust, it is clear that these are suggestions only and

not, as Plaintiff would have it, new requirements unsupported by Defendants' guidelines,

regulations, or statute.  See [R. 14; ECF No. 30-1 at 43].

Plaintiff maintains that this case is analogous to InspectionXpert Corp. v. Cuccinelli,

2020 U.S. Dist. LEXIS 38228, at *77–78 (M.D.N.C. Mar. 5, 2020), where the court found that

USCIS acted arbitrarily and capriciously in failing to consider an expert opinion in the form of a

letter from the plaintiff company's CEO.  [ECF No. 38 at 2–4, 7].  The facts of InspectionXpert,

however, are distinguishable from this case because, unlike Eisner's opinion, the expert opinion

in InspectionXpert consisted of three extremely detailed and lengthy letters from the CEO of the

company that were based on personal, inside knowledge of the business and the worker's job

duties, rather than on a job description provided by the plaintiff.  2020 U.S. Dist. LEXIS 38228, at *74–78.  In contrast, Eisner himself stated that his opinion was based only on the documents provided by Plaintiff and a single phone interview conducted with Plaintiff's co-founder, Akhil Suresh Nair.  [R. 923].  Given that the governing standard permits USCIS to give less weight to expert opinions it finds "in any way questionable," Matter of Caron Int'l, 19 I&N Dec. at 795, and based on a review of USCIS's decision and Eisner's opinion, the Court finds that USCIS did not act arbitrarily or capriciously or abuse its discretion in discounting the value of Plaintiff's expert's opinion.  See Royal Siam Corp., 484 F.3d at 148 ("While the APA authorizes a reviewing court to set aside an agency's 'action, findings, [or] conclusions' if they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' an agency's decision does not trigger that provision as long as it correctly explicates the governing law and turns on a plausible rendition of the facts in the record.").

## IV.    CONCLUSION

Based on a review of the record, the Court finds that "the agency examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  Int'l Junior Coll., 802 F.3d at 106–07 (citation omitted).  Defendants' motion for summary judgment, [ECF No. 35], is therefore GRANTED and the agency's denial of the petition is affirmed.  See River St. I, 558 F.3d at 114.  Plaintiff's motion for summary judgment, [ECF No. 30], is DENIED.

        **SO ORDERED.**

September 29, 2020                                    /s/ Allison D. Burroughs
                                                     ALLISON D. BURROUGHS
                                                     U.S. DISTRICT JUDGE